NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|                          |   |                        |
|--------------------------|---|------------------------|
| JOSEPH RABLE,            |   |                        |
|          Plaintiff,      |   | Civ. No. 04-3863 (SRC) |
|     v.                   |   |                        |
|                          |   | **OPINION**            |
| IUE-CWA LOCAL 455,       |   |                        |
|          Defendant.      |   |                        |

**CHESLER**, District Judge

This matter comes before the Court on Defendant IUE-CWA Local 455's motion for summary judgment [docket # 14]. For the reasons set forth below, the Court will grant Defendant's motion.

**BACKGROUND:**

Plaintiff, Joseph Rable, ("Plaintiff") began working for Trane Company on June 1, 1999. (Def. Ex. A - Dep. Tr. of Joseph Rable, 11:14-17 ("Tr.")). IUE-CWA Local 455 ("Defendant" or "Local 455") represents Trane Company employees at Trane's Trenton, New Jersey plant. Mr. Rable became a dues paying member of Local 455 after becoming a Trane employee. (Tr. 39:21-40:4).

One year after starting to work for Trane, Mr. Rable applied for, tested for and received his forklift license from the Company. (Tr. 16:11-17:21). Employees use a key card to enter the work building. (Tr. 20:3-4). A green card key indicates a person has a forklift license, while a

red card key indicates that the person does not. (Tr. 20-21). Mr. Rable was allowed to operate a forklift/had a forklift license for approximately two years while employed at Trane. (Tr. 18:13-16). That two years spanned 2000 to until sometime in late 2001/early 2002.[1] Mr. Rable became aware that he was no longer allowed to operate a forklift at Trane when he arrived at work one day and his green card key did not work. (Tr. 19-22).

Plaintiff complained to Trane management about the loss of his license. (Tr. 24:25-26:1, 27:11-17). A meeting was held involving Mr. Rable, Kenny Lee (the Chief Steward of Local 455), and a member of management. Mr. Rable wanted to know when he would get the green card key back. (Tr. 28:21). Management told Mr. Rable that his forklift authorization had been taken for medical reasons and told him he needed clearance from his doctor to operate a forklift. (Tr. 29:1-4, 32:7-10). Mr. Rable had been out of work on disability for two to three months prior to the loss of his license. (Tr. 29:19-22). He has sleep apnea. (Tr. 30:14).

Plaintiff did not provide the employer with the information they requested. (Tr. 31:11-33:6). Mr. Rable raised the topic with Mr. Lee and the Local Union President, Felix Tucillo, about the loss of his license. (Tr. 25:18-27:10, 34:20-35:4, 36:13-16). Mr. Rable asked to have a grievance filed over the loss of his license, but Local 455 did not file one. (Tr. 34:12-19). Kenny Lee attended some meetings involving Mr. Rable and management on different issues, including the license issue, during Mr. Rable's employment. (Tr. 27:18-24, 60:22-61:17, 89:3-16).

Trane discharged Mr. Rable on May 4, 2004, due to attendance problems. Trane has an attendance policy under which employees can accrue points for various infractions. (Def. Ex. N).

---

[1] A document recording a complaint Mr. Rable made to the employer's ethics and compliance hotline indicates the occurrence as January 2002. (See Def. Ex. D, p.1).

Under Trane's work rules, four disciplinary warnings in a 12-month period makes an employee subject to discharge. (Def. Ex. O). Plaintiff was discharged after receipt of his fifth warning notice in 12 months. (Def. Ex. G).

Plaintiff's complaint states the following reasons, in full, for suing the Defendant: "For breach of contract and I received no value for the money paid in dues. At times they worked against me resulting in me getting fired." (Pl. Complaint) (typos in original).

**PROCEDURAL HISTORY:**

Plaintiff filed his complaint on July 7, 2004, in the Superior Court of New Jersey Law Division, Special Civil Part, Mercer County. On August 13, 2004, Defendant removed the action to United States District Court, District of New Jersey. Defendants filed the instant motion for summary judgment on June 24, 2005, with a return date of July 18, 2005. Having received no opposition to this motion, the Court sent a letter to Plaintiff dated July 11, 2005, and docketed on July 13, 2005. The letter informed Mr. Rable that the return date for this motion would be adjourned to August 15, 2005, allowing him an extension to submit his opposition by August 1, 2005. The letter also informed Plaintiff that if he chose not to submit opposition, the motion would be deemed unopposed and disposed of accordingly. To date, the Court has not received any opposition from Plaintiff, nor any other communication from him with regard to this motion.

**DISCUSSION:**

A. Summary Judgment Standard:

Summary judgment is appropriate if there is no genuine issue as to any material fact and

the moving party is entitled to a judgment as a matter of law. **Fed. R. Civ. P.** 56; Serbin v. Bora Corp., 96 F.3d 66, 69 n.2 (3d Cir. 1996). In evaluating a summary judgment motion, a court must "draw all reasonable inferences in favor of the non-moving party." Armour v. County of Beaver, PA, 271 F.3d 417, 420 (3d Cir. 2001) (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000)). A motion for summary judgment requires the non-moving party to set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Albright v. Virtue, 273 F.3d 564, 570 n.6 (3d Cir. 2001). The moving party carries the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Defendants must identify the portions of the pleadings, and affidavit "which [they] believe[] demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." **Fed. R. Civ. P.** 56(e); Anderson, 477 U.S. at 242. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991) (noting that a motion for summary judgment is not defeated by mere allegations, general denials, or other "vague statements"). Rather, only disputes regarding facts that might affect the outcome of the lawsuit under the governing law will preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. If the evidence is "such that a reasonable fact-finder could find return a verdict for the nonmoving party," summary judgment should not be granted. Id. at 248; Lawrence v. Nat'l

4

Westminster Bank of New Jersey, 98 F.3d 61, 65 (3d Cir. 1996).

However, where the facts are not in dispute and the issues contested in a summary judgment motion are legal issues, the Court may proceed to decide the legal issues and rule accordingly on the summary judgment motion. See Ingram v. County of Bucks, 144 F.3d 265, 267 (3d Cir. 1998) (when there is no genuine issue of material fact in dispute and the issue facing the court is a question of law, it can properly be resolved on summary judgment).

If the nonmoving party fails to oppose the motion, Rule 56(e) provides that the Court may only grant the moving party's motion for summary judgment "if appropriate." Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d. Cir. 1990). A moving party's motion is appropriately granted when that party is entitled to judgment as a matter of law. Id. When, as here, "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. Internal Revenue Serv., 2002 WL 373448, at *2.  (D.N.J., Jan. 28, 2002) (internal citations omitted).  In addition, even if the record contains facts that might provide support for the non-moving party's position, "the burden is on [that party], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, 1989 WL 17549, at *8 (E.D. Pa. Mar. 1, 1989).

B.  Timeliness of Plaintiff's Forklift License Claim:

Plaintiff alleges that Defendant breached its duty of fair representation owed to him because "[t]hey never followed up on my request to get my forklift license." (Def. Ex. E).  He

also asserts that he asked to file a grievance over the loss of his license, but the union ignored his request. Defendant claims that Plaintiff raised these allegations too late for this Court to consider them.

Plaintiff's "contract" allegations amount to a claim that Local 455 breached its duty of fair representation owed to him. "It is a fundamental axiom of federal labor law that a union's status as the exclusive bargaining representative of an employee carries with it a statutory obligation to serve the interests of all members . . . ." Riley v. Letter Carriers Local No. 380, 668 F.2d 224, 228 (3rd Cir. 1982) (quoting Vaca v. Sipes, 87 S.Ct. 903, 909 (1967)). One way in which a union fails to meet its obligation is by "arbitrarily ignor[ing] a meritorious grievance or process[ing] it in a perfunctory fashion . . . ." Vaca v. Sipes, 87 S.Ct. 903, 917 (1967). Plaintiff asserts that he had a meritorious grievance issue and Local 455 ignored it.

A six-month statute of limitations applies to duty of fair representation lawsuits. DelCostello v. Steelworkers, et al., 103 S.Ct. 2281 (1983). Under the Third Circuit's case law, "[t]he six-month period commences when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." Vadino v. A. Valey Engineers, 903 F.2d 253, 260 (3rd Cir. 1990) (internal citation omitted). Furthermore, the Court of Appeals has instructed that a fair representation "claim accrues and the six month limitations period commences when the futility of further union appeals becomes apparent or should have become apparent." Bensel v. Applied Pilots Association, et al.,, 387 F.3d 298, 305 (3d Cir. 2004) (internal citation omitted).

Mr. Rable's deposition testimony represents that he asked the local union to file a grievance for him over management's action taking his forklift license. He made that request, in

his words, "years ago." (Tr. 49:6-16). The evidence indicates the last date on which Local 455 discussed the issue of Mr. Rable's license with management was in November, 2003. (See Def. Ex. C, ¶ 10 and attachment). Those factors evidence that any request Mr. Rable made to have a grievance filed over his lost license was declined well in excess of six months before July 7, 2004, the date the lawsuit was filed. Furthermore, Plaintiff's response to Local 455's Interrogatory Number 1 evidences that in 2003 he held the opinion the union would not help him. His response states: "This union is not your father [sic] union. In 2003, I came to believe after countless times and emails to try to talk to them. They don't care about the member." (Def. Ex. E).

As Plaintiff has not filed any response to Defendant's motion, the Court has no basis to conclude that Plaintiff did not first discover, or in the exercise of reasonable diligence should not have discovered, that it was futile to work through Local 455 at any time after November, 2003. Therefore, because Plaintiff brought his duty of fair representation claim concerning the loss of his forklift license more than six months after he knew or should have known of the acts constituting the alleged violation, this claim will be dismissed as untimely.

C.  No Breach of the Duty of Fair Representation:

Plaintiff's complaint essentially claims that Defendant breached its duty of fair representation because he "received no value for the money paid in dues[, and a]t times they worked against me resulting in me getting fired." Defendant asserts that Plaintiff cannot establish that Local 455 breached this duty.

The law is clear that a "breach of the statutory duty of fair representation occurs only

when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 87 S.Ct. at 916.  More specifically, "[i]n the context of a grievance proceeding, the rule is that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion . . . ."  Riley, 668 F.2d at 228.  The Plaintiff accuses IUE-CWA Local 455 of being "seriously negligent in their duties." (Tr. 67:8-20).  However, negligence is not synonymous with "perfunctory."  Findley v. Jones Motor Freight, Division Allegheny Corp., 639 F.2d 953, 960 (3d Cir. 1981).  Accordingly, negligence does not suffice to establish a breach of the duty of fair representation.  Id.

In addition, the law is clear that an employee does not have an absolute right to grievance arbitration.  Vaca v. Sipes, 87 S. Ct. at 917.  That principle even applies with respect to allegedly meritorious grievances.  See, Findley, 639 F.2d at 958 ("The mere refusal of a union to take a complaint to arbitration does not establish a breach of duty, even if the member's claim was meritorious." ) (internal citation omitted).

Trane discharged Mr. Rable for attendance reasons on May 4, 2004.  The discharge came after Mr. Rable received his fifth warning notice for an attendance work rule violation. (Def. Ex. F – May 4, 2004 warning notice; Def. Ex. G – May 18, 2004 letter).  Local 455 filed a grievance over Mr. Rable's discharge on May 4, 2004.  (Exhibit H).  This grievance was filed in accordance with Mr. Rable's wishes and upon his request. (Tr. 62:7-63:1).  Local 455 forwarded the discharge case to the IUE-CWA's Regional Director, Joseph Giffi, for possible arbitration. (Def. Exhibits B, K, and L).  That request was denied on the merits after Mr. Giffi reviewed all of the case information. (Def. Ex. L).  Mr. Giffi notified Mr. Rable of the decision in writing and went so far as to attach a copy of the CWA's appeal procedure.  Local 455 advised the employer

that it was withdrawing Mr. Rable's grievance through a letter dated September 23, 2004.

Plaintiff has specifically rejected the notion that Defendant was motivated by discrimination or acted in bad faith, as evidenced by his deposition testimony:

> Q. Do you think, are you alleging that the union discriminated against you or took action to harm you because you had been ill?
> A. It's not so much the union was out to get me, they were never out to get me. The union just does – they take the easy way out, they just go along with the company.
> Q. Are you alleging, and please listen to my question, are you alleging that the union discriminated against you because of your illness?
> A. I don't think they care one way or another.
> Q. It's a yes or no question.
> A. No.

(Tr. 87:8-21).

In addition, Plaintiff was unwilling to provide documentation to management so they could clear him to have a forklift license. (Def. Ex. B; Tr. 27:13-33:9). As Defendants correctly point out, Plaintiff's unwillingness to do so demonstrates that it was reasonable for Local 455 to decide not to file a written grievance on his behalf for a forklift license.

As Plaintiff has not filed any response to Defendant's motion, the Court has no basis to conclude that Local 455's conduct toward him was arbitrary, discriminatory, or in bad faith. Indeed, from the evidence currently before the Court, it does not appear that Defendant acted inappropriately under the circumstances. Therefore, Plaintiff's complaint, which essentially asserts a breach of a duty of fair representation, will be dismissed.

## **CONCLUSION:**

For the foregoing reasons, Defendant's motion for summary judgment will be granted.

The Court will enter an appropriate Order.

                                                                   s/
                                             Stanley R. Chesler, U.S.D.J.

DATED: August 16, 2005